BLANCHE H. POLSEN

*vs.*

H. H. GUNDER ET ALS.

Superior Court          Fairfield County          File No. 31952

MEMORANDUM FILED JANUARY 8, 1940.

*Irving Elson,* of Bridgeport, for the Plaintiff.

*Raymond E. Hackett,* and *Spelke & Zone,* of Stamford, *Philip Reich* and *Theodore Steiber,* of Bridgeport, for the Defendants.

O'SULLIVAN, J. This action was instituted just ten years ago. Originally, there were seven defendants, but against two of them, H. H. Gunder and Philip Gunder, the action has been withdrawn. Another defendant, R. J. Randall, a nonresident, was not served with process and did not appear. No continuance was granted for his benefit in conformity with the statute, although from the officer's return it appears then certain funds of his in the hands of a Naugatuck bank were garnisheed. No default has even been entered against him. The need to unravel this procedural snarl is of no concern, however, in view of the conclusions reached upon the merits of the litigation, which has been actively pursued against the other four defendants, Arthur F. Connor, E. J. Sturges, Nehemiah Candee, and Bankers Financial Trust.

The controversy arose over certain alleged fraudulent representations appearing in a pamphlet published by the last named defendant. Induced to act by these representations, the plaintiff purchased certain of its shares which later proved to be valueless. In bringing this action, she relied on two counts, one predicated on the theory that she had affirmed and the other on the theory that she had disaffirmed the purchase. During the progress of the trial, and after formal motion had been made, the court ordered the plaintiff to elect upon which theory she would proceed. Having elected to rely on the latter, consideration need be extended only to the second count, the one she has chosen to pursue.

The history of events, to the extent necessary to understand the basis of the conclusions reached, is this. In 1929, Bankers Financial Trust, which will be called the Company, even though this may be an inaccurate characterization, was operating as a holding trust. It owned a majority of the voting shares of stock of Bankers Capital Corporation, which was a trading company, Eastern Bankers Corporation, a financial investment trust, and American Fiduciary Corporation, a fiduciary company. The Company had been organized in the middle twenties under the laws of the State of Massachusetts and whether it was corporate in form or not is of no moment. Its activities were in the hands of six trustees of whom Sturges, Candee and Connor were three. Under date of August 1, 1929, the trustees caused to be printed a ten-page pamphlet, captioned "Bankers

'Financial Trust and controlled institutions. Report for six months period ending June 29, 1929." The report was addressed to the shareholders of the Company and incorporated a letter from H. H. Gunder, as chairman of the board of trustees, commenting on the progress of the Company during the first half of 1929, on its existing status, and finally on its prospects for the balance of the year. The pamphlet further contained a graph portraying the relationship between the Company and the three corporations. Other pages carried copies of letters from the president of each corporation to its stockholders, followed by a balance sheet of each.

For some time, the Company had been disposing of its shares to the general public through the medium of its trading company, Bankers Capital Corporation, which, on October 18, 1929, sold to the plaintiff 52 shares for $2,054, and later 20 shares for $800. Before making her purchase, she had examined the pamphlet above referred to and she relied upon the accuracy of its statements when she bought the shares. A short time later, but after the stock debacle of October 29th, she tendered back to Bankers Capital Corporation the certificates evidencing her ownership of the shares and demanding the return of her money on the ground that she had been defrauded. Having been met with a refusal, she brought this action, claiming in the second count a disaffirmance of the sale and seeking as damages the purchase price of the shares. The law recognizes her right to this course, for a party defrauded in a bargain may, on discovering that the other was guilty of fraud, either disaffirm the contract and demand back what had been parted with, or affirm the bargain and sue to recover damages for the deceit. 2 Cooley Torts (3rd ed. 1906) p. 962; *Yale Gas Stove Company vs. Wilcox*, 64 Conn. 101, 127. By the election of her remedies, the plaintiff has chosen the first' alternative.

The allegations of her complaint, as limited by certain rulings on evidence during the course of the trial, establish the extent within which her claim of fraud may circulate. And to her complaint one must first turn to ascertain what there was in the conduct of these defendants to warrant her maintaining that she had been defrauded. It is too elementary to require citation that one's right to recover is circumscribed by what he alleges as his cause of action.

Turning then to the complaint, the trier is confronted by one general limitation. The fraud is based exclusively on repre-

sentations claimed to be found in the pamphlet issued on August 1st. More particularly is it alleged that the following statements claimed to be found therein were false and fraudulent.

1. "Bankers Financial Trust was possessed of a very large capital."

This statement is nowhere to be found. The only recital on such a subject is one to the effect that the Company owned large blocks of the shares of stock of Bankers Capital Corporation, Eastern Bankers Corporation and American Fiduciary Corporation, and this recital was true.

2. "The Company was paying dividends."

This, likewise, was correct. In 1926, $42,950 had been distributed as dividends; in 1927, $165,640; in 1928, $100,000; in 1929, $200,000 on February 1st and $100,000 more on August 1st.

3. "The Company was duly organized as a corporation under the laws of Massachusetts."

The pamphlet does not so state. As a fact, the Company, while being indebted for its existence to a Massachusetts statute, was not incorporated, as that expression is used, but was a voting or holding trust, and its true characterization was expressly set forth.

4. "It was making enormous profits."

Here, again, the pamphlet is silent so far as such a statement is concerned.

5. "Dividends and stock rights would be given to holders of stock as of November 15, 1929."

There is an indication to be found in the chairman's letter that warrants for rights to subscribe for additional shares would probably be issued in the latter part of 1929. If this statement was material at all, it is couched in terms of probabilities, which the stock market crash made impossible of performance. Furthermore, it was to be carried into effect at a time subsequent to the disaffirmance of the plaintiff's sale, and finally, there is an absence of supporting proof that at the time the statement was made the defendants had no intention of carrying their forecast of an event into effect.

6. "The payment of dividends was assured because of the great profits the Company was earning."

7. "The Company was being honestly and efficiently managed; by reason whereof, great safety and economy of management was possible."

The pamphlet is devoid of anything remotely suggesting either representation set forth in subdivision 6 and 7.

There is nothing further upon which this plaintiff makes claim of fraudulent representations, as her complaint is drafted, and it is quite obvious that her cause of action, as alleged, is without merit. I cannot stress too strongly that the theory on which she has sought relief is predicated solely on fraudulent representations, and these she has failed to establish.

Another formidable barrier which precludes her recovering is to be found in contemplating the position she is in, due to her election to proceed on the theory that she had disaffirmed her purchase. If it be assumed that the pamphlet contained statements which were false, her right would be limited, would it not, to a recovery from the one who had gained by the sale of the shares. Bankers Capital Corporation was engaged not only in disposing of the shares of the Company for the Company as an original issue, but was also engaged in selling shares for those who had previously acquired an ownership of them. There being no proof that the shares which she bought were sold by the Company, it might well have been that they were those owned by some individual for whom the trader was acting. In the latter event, the Company would have received nothing from the sale and hence there was no contract with the Company which she could disaffirm. Her remedy would not be the one she now has elected, but rather one to recover in tort for fraudulent representations which had led her into an unhappy bargain with a third party. In such an event, the entire theory of the plaintiff's cause would be opposed to that which her complaint has adopted, and even the measure of damages would be different.

Being unable to conclude from a dearth of evidence that there was a contract between the plaintiff and the Company, there was nothing which she could disaffirm.

Accordingly, judgment may enter for the defendants.